

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-1054-07

---

### SHELDON ROBERTS, Appellant

### v.

### THE STATE OF TEXAS

---

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SIXTH COURT OF APPEALS
### DALLAS COUNTY

---

**KELLER, P.J., filed a dissenting opinion.**

From a sufficiency of the evidence perspective, the correct question is not whether appellant's culpable mental state with respect to Virginia Ramirez can be transferred to her unborn child; the correct question is whether appellant's culpable mental state with respect to *anyone* can be transferred to Ramirez's unborn child. The answer to the latter question is "yes" because appellant's culpable mental state can be transferred to the unborn child from two-year-old Patricia.

Though inartfully phrased and argued, the pro se appellant's third ground for review appears to contain two complaints: (1) about the use of a transferred intent instruction in the the jury charge and (2) about the legal sufficiency of the evidence under a transferred intent theory. Appointed counsel and the Court have chosen to focus on the legal sufficiency complaint, but both fail to sufficiently appreciate a complication created by legal sufficiency law with respect to the transferred intent question. The jury charge in this case contained an abstract instruction explaining the law of transferred intent. The application portion of the charge authorized the jury to transfer appellant's culpable mental state from Ramirez to her unborn child while also using that same culpable mental state for Ramirez's own death. If the complaint we are addressing were one of jury charge error, then the question would be the continuing vitality of the holding in *Norris v. State,*[1] which would permit the prosecution to use this single culpable mental state for both of these purposes.[2]

But in a legal sufficiency review, we focus not on the charge that was actually given, but on "the elements of the offense as defined by the hypothetically correct jury charge for the case."[3] The hypothetically correct jury charge includes general criminal liability elements that need not be pled in the indictment, such as the law of transferred intent.[4] Though there is a potential problem with considering a non-indictment theory of liability that is completely absent from the jury charge, any theory that is encompassed at least by the abstract portion of the charge must be considered in a

---

[1] 902 S.W.2d 428 (Tex. Crim. App. 1995).

[2] *See id.*

[3] *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

[4] *Id.* at 239-40.

sufficiency review, even if it is not contained in the application paragraph.[5]  Tracking the relevant language of the transferred intent statute, the abstract portion of the jury charge in this case provided, "A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated or risked is that a different person was injured, harmed, or otherwise affected."[6]  The identity of the actual victim (the culpable-mental-state transferee) is required for notice and must named in the indictment, but the "desired, contemplated, or risked" victim (the culpable-mental-state transferor) can be any person – including, in this case, Patricia, Ramirez's two-year-old daughter who survived the incident.  Of course, the evidence must still be sufficient to show that appellant possessed the required culpable mental state with respect to Patricia, and to that question I now turn.

Eight individuals (as defined by law)[7] were in the apartment before the assailants entered.  Heath Laury, Jessica Thompson, and Bradlee Bowie were in the living room.  Royale Bolden and Corey Smith were in the front bedroom.  Ramirez (pregnant with her unborn child) and two-year-old Patricia were in the back bedroom.  Each bedroom had a door that opened out into the living area.  After the assailants entered the apartment, Bowie fled to the back bedroom because he knew there would be an open window.  Before exiting through that window, he noticed that Ramirez and

---

[5]  *See Vega v. State*, 2008 Tex. Crim. App. LEXIS 1179, *8 (October 1)("it is irrelevant in a sufficiency review that the application paragraph of the charge actually given erroneously applied only the law of parties under § 7.02(a)(2)"); *Grissam v. State*, 267 S.W.3d 39 (Tex. Crim. App. 2008)(sufficiency of the evidence analysis as to both theories of burglary should have been conducted where both were contained in the jury charge, though only one was in the application paragraph).

[6]  *See* TEX. PENAL CODE §6.04(b).

[7]  *See id.*, §1.07(a)(26).

Patricia were in the room. Bowie then ran home and had no further knowledge of what happened in the apartment. No one, other than the assailants, witnessed Laury and Thompson's movements in the house during the encounter, but their bodies were later discovered in the back bedroom, so an inference could be drawn that they fled there. In the front bedroom, Bolden and Smith hid in the closet. They heard gunshots during the entire encounter. Bolden heard Ramirez enter the front bedroom and scream, "Not my baby. Not my baby," followed by the last two shots. After the assailants left, Bolden left the closet and saw Ramirez lying on the floor, dead, with Patricia lying on her chest and in her arms. According to testimony based upon forensic evidence, Ramirez was behind the bedroom door, probably trying to close it, and turning away from it, when she was shot. Five bullet holes were found in the door and three bullet wounds were found in Ramirez's body. Ramirez suffered wounds to the head, the right shoulder, and the left posterior lateral thigh. Miraculously, though she was shaken and upset, Patricia was physically unharmed.

A jury could have rationally believed that Ramirez and Patricia were together at all times, and that in fact, Ramirez carried Patricia from the back bedroom to the front bedroom in an attempt to escape their attackers. A jury could likewise rationally believe that the assailants saw both Ramirez and Patricia in the back bedroom or in the living area leading to the front bedroom, and the jury could further believe that the assailants pursued mother and child and shot at them both as Ramirez was closing the door. Ramirez's scream, "Not my baby," referred most obviously to her two-year-old child and indicated Ramirez's own belief that the assailants were attacking, or at least endangering, not only herself, but Patricia as well. That the assailants continued to fire after hearing Ramirez scream a reference to her child further indicates that they either intended to kill the child

along with Ramirez, or they were reasonably certain[8] their actions would cause that result and they simply did not care.

Because the evidence was sufficient to show that the assailants possessed a required culpable mental state with respect to Patricia, that culpable mental state could transfer from Patricia, who survived, to the unborn child, who did not. We need not address the continuing vitality of *Norris* to resolve the evidentiary sufficiency claim.

With these comments, I respectfully dissent.

Filed: December 17, 2008
Publish

---

[8] "Knowledge" is a sufficient culpable mental state for capital murder involving the murder of more than one person. *See id.*, §§19.03(a)(7)("murders more than one person"), 19.02(b)(1)("intentionally or *knowingly* causes the death of an individual")(emphasis added), 6.03(b)("knowingly" defined as "aware that . . . conduct is reasonably certain" to cause a prohibited result).